**SO ORDERED.**

**SIGNED this 29th day of August, 2025.**



_____
Mitchell L. Herren
United States Bankruptcy Judge

_____

Designated for online publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: | |
| JASON M. PENNINGTON<br>TERRI J. PENNINGTON,<br>      Debtors. | Case No. 19-10112<br>Chapter 13 |
| ILENE J. LASHINSKY, U.S. Trustee,<br>      Plaintiff,<br>vs.<br>JASON M. PENNINGTON,<br>      Defendant. | Adv. No. 24-5020 |

**Memorandum Order Granting
U.S. Trustee's Motion for Summary Judgment**

A bankruptcy discharge releases a debtor from personal liability for specified debts, meaning the debtor no longer is responsible to pay the discharged debts. A bankruptcy court has "few more powerful remedies at its disposal" than the

revocation of a debtor's previously granted discharge.[1] And because of the "fresh start" objective of bankruptcy,[2] revoking a discharge is not an action that should be taken lightly.[3]

But the fresh start obtained through bankruptcy is limited to the "honest but unfortunate debtor."[4] The undisputed facts here show the defendant was not an honest debtor: he pled guilty to embezzlement and admits he used the embezzled funds, in part, for his Chapter 13 plan payments. The U.S. Trustee seeks revocation of the defendant's discharge under 11 U.S.C. § 1328(e)[5] on these uncontested facts.

The record shows the U.S. Trustee is entitled to judgment as a matter of law on her claim that revocation of the defendant's discharge is appropriate. The Court therefore grants the U.S. Trustee's motion for summary judgment on her § 1328(e) claim.[6]

---

[1] *Morris v. Wright (In re Wright)*, 371 B.R. 472, 479 (Bankr. D. Kan. 2007) (addressing trustee's pursuit of revocation of discharge in a Chapter 7 case).

[2] *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (discussing the concept of the "fresh start policy of the Bankruptcy Code" where "certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." (internal quotations omitted)).

[3] *Davis v. Osborne (In re Osborne)*, 476 B.R. 284, 292 (Bankr. D. Kan. 2012) ("The bankruptcy court must strictly construe the provisions on revocation of discharge and revoke a discharge only for reasons clearly stated in the Code.").

[4] *Grogan*, 498 U.S. at 287.

[5] All statutory references are to Title 11 of the United States Code (the Bankruptcy Code) unless otherwise indicated. The U.S. Trustee appears by Jordan M. Sickman. Mr. Pennington is proceeding pro se in this adversary proceeding.

[6] Doc. 16.

I. **Undisputed Material Facts**

Debtors Jason and Terri Pennington, with bankruptcy counsel, filed a Chapter 13 bankruptcy petition on January 28, 2019. At the time of the filing of the petition, Mr. Pennington had been working as a broker for Tallgrass Freight for four months, earning net income of $1924.47 per month. Ms. Pennington had been working as a medical assistant for two months, earning net income of $1704.12 per month.[7] Debtors' plan proposed payments of $1600 per month to be paid via employer pay order to Mr. Pennington's employer, Tallgrass Freight.[8] The pay order was issued.[9]

With Debtors' plan still unconfirmed, Debtors filed an amended Schedule I on September 9, 2019.[10] In it, Ms. Pennington disclosed she was working for the same employer and earning the same income. But Mr. Pennington's employer and income had changed. He disclosed he had been working for MTS Companies for four months, earning net income of $2485 per month.[11] At this point an order was issued to Debtors directing payment to the Trustee of $1685 each month from Debtors' earnings and requiring notification to the Chapter 13 Trustee if "employment is

---

[7] Case No. 19-10112, Doc. 1 p. 37-38.

[8] *Id.*, Doc. 2 p. 1-2.

[9] *Id.*, Doc. 6.

[10] *Id.*, Doc. 48.

[11] *Id.* p. 1-2.

3

terminated," as well as the "reason for such termination."[12] At that point, Debtors' plan was confirmed.[13]

The plan confirmation order also required Debtors to immediately notify the Court and the Chapter 13 Trustee in writing of any change to employment.[14] Debtors were also required to "timely report" to the Chapter 13 Trustee "any events affecting disposable income which are not projected on Schedules I and J, including but not limited to tax refunds, inheritances, prizes, lawsuits, gifts, etc., that are received or receivable during the pendency of the case."[15] Debtors were mailed a copy of the confirmation order.[16]

Just a couple of weeks after confirmation, on September 30, 2019, the United States of America filed a secured claim in Debtors' case for $392,250,[17] and the Chapter 13 Trustee filed a motion to dismiss, indicating the claim was not provided for in the plan and would make the case not feasible.[18] An attorney for the United State of America, on behalf of its agency United States of America Asset Forfeiture, then entered an appearance in Debtors' case.[19] Ultimately, the Chapter 13 Trustee's motion to dismiss was withdrawn, and an Order was entered on March 5, 2020,

---

[12] *Id.*, Doc. 50. Debtors were mailed a copy of this order. *Id.*, Doc. 53.

[13] *Id.*, Doc. 51.

[14] *Id.*, ¶ 3.

[15] *Id.*, ¶ 5.

[16] *Id.*, Doc. 54.

[17] *Id.*, Proof of Claim No. 14. The claim stemmed from a forfeiture judgment from a 2013 indictment against Mr. Pennington based on various counts of fraud related to his work as an insurance agent. *See* Case No. 6:13-cr-10031-JTM (D. Kan.).

[18] Case No. 19-10112, Doc. 55.

[19] *Id.*, Doc. 59.

4

requiring ongoing monthly plan payments of $1855 per month.[20] In that Order, Debtors agreed the United States's claim was nondischargeable as to Mr. Pennington and secured by any assets owned by Mr. Pennington, and Debtors agreed to pay the United States "directly and outside of the Plan the amount of $50, without interest, to be applied to its Claim No. 14."[21] A new order was entered requiring Debtors to pay the Trustee directly $1855 per month, again, directing the payment be from earnings and requiring Debtors to notify the Chapter 13 Trustee if employment was terminated and the reason for any employment termination.[22]

A few months thereafter, in July 2020, El Paso Animal Hospital hired Mr. Pennington. While employed at El Paso Animal Hospital, Mr. Pennington accessed his employer's payroll systems and began transferring embezzled funds to his personal bank accounts. Mr. Pennington also used El Paso Animal Hospital's credit card for his personal expenses. In September 2021, El Paso Animal Hospital discovered Mr. Pennington's bad acts and fired him.

Meanwhile, due to mortgage payment changes, Debtors' plan was amended again in February 2021[23] and April 2022,[24] by which point Debtors' monthly plan payment had increased to $2023 per month. Again, in each order directing payment,

---

[20] *Id.*, Doc. 83.

[21] *Id.*, p. 3. It is unclear to the Court if Mr. Pennington actually paid $50 or $50 per month, and if monthly, whether those payments were made.

[22] *Id.*, Doc. 87. Debtors were mailed a copy of this Order. *Id.*, Doc. 88.

[23] *See id.*, Docs. 97 (Amended Order to Debtors to Pay Trustee) and 99 (Order Granting Trustee's Motion for Post-Confirmation Amendment of Plan).

[24] *See id.*, Docs. 108 (Amended Order to Debtors to Pay Trustee) and 110 (Order Allowing Trustee's Motion to Modify Confirmed Plan).

5

Debtors were ordered to make plan payments from earnings and required to notify the Chapter 13 Trustee if their employment was terminated and the reason for termination.[25]

On April 18, 2023, Mr. Pennington was indicted in federal court on multiple counts related to his actions while working at El Paso Animal Hospital.[26] The U.S. Attorney did not notify either the Chapter 13 Trustee or the U.S. Trustee of the indictment at this point, and neither the Chapter 13 Trustee, nor the U.S. Trustee independently discovered the indictment.

Nearly a year later, on January 24, 2024, the Chapter 13 Trustee filed a Notice of Chapter 13 Plan Completion.[27] The next day, on January 25, 2024, Debtors filed a Certification of Compliance and Motion for Entry of Discharge.[28] Therein, Debtors' counsel stated all payments had been completed under the terms of Debtors' confirmed plan. Debtors' sworn certification, signed by Mr. Pennington on December 12, 2023, under penalty of perjury, indicated he understood the Court "may revoke discharge if such discharge was procured by fraud."[29] At that point, Mr. Pennington reported he was "self-employed" and gave his current employment address as his home address.[30]

---

[25] Debtors received copies of these orders via mail. *Id.*, Docs. 98 and 99.

[26] *See* Case No. 6:23-cr-10046-JWB-1 (D. Kan.). The indictment charged several counts of wire fraud and money laundering. *Id.* Doc. 1 (indictment).

[27] Case No. 19-10112, Doc. 118.

[28] *Id.*, Doc. 119.

[29] *Id.*, p. 3.

[30] *Id.*, p. 2.

**6**

Less than three weeks later, on February 15, 2024, Mr. Pennington entered into a plea agreement in the criminal case. In that plea agreement, Mr. Pennington agreed he accessed El Paso Animal Hospital's payroll systems and transferred embezzled funds to his personal bank accounts. Mr. Pennington transferred his legitimate paychecks to a Bank of America account ending in 2786 and transferred the embezzled funds to a Bank of America account ending in 3987. Mr. Pennington also agreed that between unauthorized credit card charges and the embezzled funds, El Paso Animal Hospital's loss total was $40,947.86. Of this, the embezzled funds totaled $32,391.98 and the unauthorized credit card charges totaled $8555.88.

Just two weeks later, on February 28, 2024, an order was entered granting Debtors a discharge.[31] Mr. Pennington never disclosed in Debtors' bankruptcy case that he worked at El Paso Animal Hospital, that his employment was later terminated from that facility, that he obtained money through his embezzlement at El Paso Animal Hospital, or that his income increased through his embezzlement. Neither Debtors' bankruptcy counsel, nor the Chapter 13 Trustee knew about Mr. Pennington's indictment or guilty plea until after Debtors' discharge was entered. The U.S. Trustee alleges the Chapter 13 Trustee learned of Mr. Pennington's indictment and guilty plea via email from the U.S. Attorney's office on April 8, 2024, and the Chapter 13 Trustee notified the U.S. Trustee's office the same date.[32]

---

[31] *Id.*, Doc. 122.

[32] *Id.*, Doc. 1 p. 8 ¶ 39-41.

**7**

Based on the U.S. Trustee's analysis of Debtors' four bank accounts held during the pertinent time, Debtors would not have been able to pay for their non-plan payment household expenses and make their plan payments without use of the embezzled funds. According to the Chapter 13 Trustee's final report and account, a total of $91,871.11 in unsecured claims were discharged without full payment in Debtors' Chapter 13 case.[33]

## II. Procedural History

The U.S. Trustee initiated this adversary proceeding against Mr. Pennington on November 7, 2024, stating one count: revocation of discharge under § 1328(e). Mr. Pennington filed a pro se answer to the complaint and asserted a general denial that his discharge was obtained through fraud, arguing the "payments made under the Chapter 13 plan were primarily funded by legitimate earnings through multiple lawful employments during the Plan Period."[34]

The U.S. Trustee has now moved for summary judgment on its complaint.[35] Mr. Pennington responded to the U.S. Trustee's motion claiming "genuine disputes of material fact regarding the intent behind the alleged fraud, the extent of [Mr. Pennington's] compliance with the Chapter 13 plan, and whether the embezzlement directly resulted in the bankruptcy discharge being granted,"[36] but he did not individually respond to the motion's individual statements of material fact.

---

[33] Case No. 19-10112, Doc. 125.

[34] Doc. 6 p. 1-2.

[35] Doc. 16.

[36] Doc. 19 p. 1.

### III. Analysis

#### A. Jurisdiction, Venue, and Burden of Proof

The Court has jurisdiction over this core proceeding arising under title 11,[37] and venue is proper.[38]

The party seeking revocation of discharge has the burden of proof, by a preponderance of the evidence, to establish revocation of discharge under § 1328(e).[39]

#### B. Standard for Summary Judgment

Summary judgment is appropriate where the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[40] In ruling on a motion for summary judgment, the court must draw all reasonable inferences from the record in favor of the non-moving party.[41] Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important

---

[37] 28 U.S.C. §§ 1334(b), 157(b)(1) (granting authority to bankruptcy judges to hear core proceedings), (b)(2)(J) ("objections to discharges" are core proceedings).

[38] 28 U.S.C. § 1409.

[39] *Hamilton v. Fisher (In re Fisher)*, 486 B.R. 200, 210 (Bankr. D. Kan. 2013) ("The burden of proof rests upon the Trustee, the party seeking revocation of the discharge, and the party seeking revocation must satisfy, by a preponderance of the evidence, all of the elements of proof enumerated below."); *see also Chicago Patrolmen's Fed. Credit Union v. Maxwell (In re Maxwell)*, 597 B.R. 418, 422 (Bankr. N.D. Ill. 2019) (each element of § 1328(e) must be established by a preponderance of the evidence).

[40] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Rule 56 applies to this adversary proceeding via Fed. R. Bankr. P. 7056.

[41] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

9

procedure "designed to secure the just, speedy and inexpensive determination of every action."[42]

When assessing a motion for summary judgment, the movant bears the burden to demonstrate there is no genuine dispute as to material facts,[43] and also has the burden to prove entitlement to judgment as a matter of law.[44] The non-moving party can avoid summary judgment if it identifies specific evidence that demonstrates there is a genuine dispute of material fact for trial, or if the undisputed facts do not establish a sufficient legal basis to grant the movant judgment as a matter of law.[45]

Here, Mr. Pennington responded to the U.S. Trustee's motion for summary judgment, but did not respond to the individual facts asserted in the motion. Because Mr. Pennington did not respond to those properly supported facts, the Court is permitted by Fed. R. Civ. P. 56 to "consider the fact[s] undisputed for purposes of the motion"[46] and "grant summary judgment if the motion and

---

[42] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[43] *Id.* at 330. A genuine dispute of material fact exists if, based on the evidence, a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[44] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 322–23).

[45] Fed. R. Civ. P. 56(a). *See also Assessment Tech. Institute, LLC v. Parkes*, 588 F. Supp. 3d 1178, 1189 (D. Kan. 2022) ("To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate no reasonable trier of fact could find other than for the moving party." (internal quotation omitted)); *In re QuVis, Inc.*, 446 B.R. 490, 493-94 (Bankr. D. Kan. 2011) (noting even if there are no disputed material facts, movant has burden to show those facts entitle movant to judgment as a matter of law).

[46] Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion.").

10

supporting materials—including the facts considered undisputed—show that the movant is entitled to it.[47] This same result is required by District of Kansas Local Bankruptcy Rule 7056.1. Rule 7056.1(a) states the "court will deem admitted for the purpose of summary judgment[] all material facts contained in the statement of the movant unless the statement of the opposing party specifically controverts those facts." Mr. Pennington's pro se status does not relieve him of his responsibility to follow these procedural requirements.[48]

Only the properly supported *facts*–outlined above in this Court's "Undisputed Material Facts"—are deemed admitted by the Court, however; not the conclusions of law proffered by the U.S. Trustee in its motion.[49] Summary judgment in favor of the U.S. Trustee is therefore appropriate *if* those material facts demonstrate the U.S. Trustee is entitled to judgment as a matter of law. This is what Mr. Pennington contests in his response to the U.S. Trustee's motion: he argues the facts do not support revocation of discharge under § 1328(e).

---

[47] Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it.").

[48] *See, e.g., Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 540 (10th Cir. 2005) ("Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." (internal quotations and alterations omitted)).

[49] *See* D. Kan. LBR 7056.1(a); Fed. R. Civ. P. 56(e)(2). *See also Reed v. Nellcor Puritan Bennett*, 244 F. Supp. 2d 1205, 1208 (D. Kan. 2003) (accepting "as true all material facts asserted" with proper support where nonmoving party failed to respond to a motion for summary judgment); *cf. Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1219 (10th Cir. 2011) (an allegation not supported by factual content but "merely a conclusion of law" is not deemed admitted in light of motion to dismiss pleading standards); *Poulin Ventures, LLC v. MoneyBunny Co.*, No. 1:19-cv-01031-JCH-GBWA, 2022 WL 326286, at *4 (D.N.M. Feb. 3, 2022) (a "defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact," but "is not held to admit facts that are not well-pleaded or to admit conclusions of law" (internal quotations omitted)).

### C. Revocation of Discharge under § 1328(e)

A discharge is granted under § 1328(a) after completion of all payments under a confirmed plan. Then subsection (e) of § 1328 provides as follows:

> On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if--
> (1) such discharge was obtained by the debtor through fraud; and
> (2) the requesting party did not know of such fraud until after such discharge was granted.[50]

A revocation in effect is a denial of discharge, because it makes the discharge a "nullity" and the debtor is not released from any personal liability for any prepetition obligation.[51]

Under § 1328(e), revocation of discharge first requires meeting a timing element: the revocation request must be made "before one year after a discharge . . . is granted." Here, the U.S. Trustee sought revocation of the discharge on November 7, 2024, less than nine months after discharge was entered on February 28, 2024. The Court therefore concludes the U.S. Trustee's request is timely.

After meeting the timing requirement, a court may revoke a discharge upon a showing of two elements: "(1) the discharge was obtained through fraud and (2) the

---

[50] The notice and hearing required by § 1328(e) "must be an adversary proceeding," as initiated by the U.S. Trustee here. *Midkiff v. Stewart (In re Midkiff)*, 342 F.3d 1194, 1198 (10th Cir. 2003) (stating "[t]he hearing must be an adversary proceeding" and citing Fed. R. Bankr.P. 7001(4) ("[A] proceeding to object to or revoke a discharge [is an adversary proceeding].")).

[51] *In re Midkiff*, 342 F.3d at 1199 ("[R]evocation of discharge . . . has the same effect as a denial of discharge. The revocation of a discharge makes the discharge a nullity." (internal quotations omitted)).

moving party did not know of the fraud until after the discharge was granted."⁵² The Court must therefore assess whether the U.S. Trustee is entitled to judgment as a matter of law that the discharge was obtained by fraud and the U.S. Trustee did not know of the fraud until after entry of Mr. Pennington's discharge.

First, regarding the U.S. Trustee's showing the "discharge was obtained by the debtor through fraud,"⁵³ in the Tenth Circuit, the fraud required to be shown to support revocation of discharge is fraud in fact—not implied fraud, but rather an intentional wrong with an imputation of bad faith or immorality.⁵⁴ Revocation of a discharge "is appropriate only where the alleged fraud would have resulted in the

---

⁵² *Hamilton v. Fisher (In re Fisher)*, 486 B.R. 200, 210 (Bankr. D. Kan. 2013). *See also Chicago Patrolmen's Fed. Credit Union v. Maxwell (In re Maxwell)*, 597 B.R. 418, 422 (Bankr. N.D. Ill. 2019) ("Section 1328(e) requires that the moving party establish three elements: (1) the request for revocation of the discharge must be made within one year after a discharge is granted; (2) that the discharged was procured by the debtor through fraud; and (3) that the requesting party did not know of the fraud until after the discharge was granted."(internal quotations omitted)).

⁵³ Section 1328(e) uses the same language as revocation of discharge under § 727(d)(1). Like § 1328(e), § 727(d)(1) says "the court shall revoke a discharge granted under subsection (a) of this section if-- (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." As a result, the same standards and case law interpreting § 727(d)(1) may be used to interpret § 1328(e). *See In re Maxwell*, 597 B.R. at 422-23 ("Where two statutes deal with the same subject matter, they are to be read *in pari materia*, meaning that a court should read the two statutes as if they were one law, Other than the one-year limitation imposed in § 1328(e), both provisions address the same subject matter and operate in the same manner. Both provisions revoke a debtor's discharge if: (1) the debtor obtained the discharge through fraud; and (2) the moving party was unaware of the fraud until after the discharge occurred." (internal quotations and citations omitted)). Section 727(d)(1) is also "construed strictly against the objecting party and liberally in favor of the debtor." *In re Silver*, 367 B.R. 795, 800 (Bankr. D.N.M.), aff'd, 378 B.R. 418 (10th Cir. BAP 2007).

⁵⁴ *In re Silver*, 367 B.R. 795, 806 (Bankr. W.D.N.M. 2007) (discussing Collier on Bankruptcy, legislative history of § 727(d)(1), and case law). *See also In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991) ("To revoke a discharge under § 727(d), the debtor must have committed a fraud in fact which would have barred the discharge had the fraud been known.").

13

denial of the debtor's discharge had the Court been made aware of such conduct prior to the entry of the discharge."[55]

Mr. Pennington does not deny that fraud occurred.[56] Rather, Mr. Pennington argues the fraud at issue was not material to the discharge process. Mr. Pennington claims his plan payments were "primarily funded by legitimate income" and therefore his fraud did not "materially affect the overall fulfillment of the bankruptcy plan."[57] He also argues money from both legitimate and embezzled sources was "intermingled and used interchangeably" and therefore it is impossible to know which portion of his plan payments came from fraudulent conduct.[58] Mr. Pennington's overall argument is that most of his plan payments were made via his employment income,[59] and so because only a portion of his plan payments were made with fraudulently obtained income, § 1328(e) is not satisfied.[60]

---

[55] *In re Eppers*, 311 B.R. 826, 831 (Bankr. D.N.M. 2004) (granting revocation of discharge where the debtor inaccurately described and valued her interest in real property on her Schedules).

[56] As noted, Mr. Pennington pled guilty to the indictment against him, and admitted he "transferr[ed] embezzled funds, via interstate wire transmission, from [El Paso Animal Hospital] to his personal bank accounts." Case No. 6:23-cr-10046-JWB-1 (D. Kan.), Doc. 19 (plea agreement).

[57] Doc. 19 p. 2. Mr. Pennington cites *In re Taddeo*, 685 F.2d 24 (2nd Cir. 1982), "for the general principle that fraud must be material to the bankruptcy proceeding." *Id.* p. 9. The *Taddeo* case addresses the interpretation of § 1322(b) (governing confirmation requirements for Chapter 13 plans), does not address materiality or § 1328(e) in any way, and is wholly inapplicable.

[58] *Id.* p. 3.

[59] Mr. Pennington submits additional facts showing he earned legitimate income during his plan period, and he was employed during that time. These facts are not in dispute. The U.S. Trustee has not and does not contest that Ms. Pennington was employed during the plan period and that Mr. Pennington did receive legitimate employment income during that period.

Mr. Pennington also states, without explanation, that as a factual matter, the fraud stemmed from actions occurring after the discharge was granted. But the uncontested facts show otherwise. The embezzlement occurred during Mr. Pennington's employment with El Paso Animal Hospital beginning in July 2020, and the discharge was not entered until February 2024.

[60] Mr. Pennington may also be arguing it would not be fair to revoke Ms. Pennington's discharge, *see, e.g.*, Doc. 19 p. 8 ("Penalizing the Defendant alone for this isolated incident, while disregarding the

14

Mr. Pennington's attempt to add a materiality requirement to § 1328(e) is not founded in the statute. While revocation of discharge should be strictly construed and not expanded beyond the bases quantified in the Bankruptcy Code,[61] the uncontroverted facts show fraud in fact—an intentional wrong. Mr. Pennington obtained $32,391.98 in embezzled funds. He used those funds to make plan payments.[62] Debtors would not have been able to make their plan payments without the infusion of cash from the embezzled funds, and Mr. Pennington intentionally obtained that infusion of cash wrongly. As a result, there is a direct tie from Mr. Pennington's embezzlement and his discharge. The discharge could not have occurred without the embezzlement. Section 1328(e) asks whether a discharge is obtained through fraud. It does not require some weighing of legitimate payments versus payments made with fraudulently obtained money. The question is – did Mr. Pennington receive a discharge because of his fraud. The answer is yes.

The second required showing under § 1328(e) is that the party requesting revocation "did not know of such fraud until after such discharge was granted." It is

---

joint effort and contributions made by both spouses, would result in an unfair and unjust outcome."). The U.S. Trustee does not seek revocation of Ms. Pennington's discharge, and her discharge will be unaffected.

[61] *Davis v. Osborne (In re Osborne)*, 476 B.R. 284, 292 (Bankr. D. Kan. 2012) ("The bankruptcy court must strictly construe the provisions on revocation of discharge and revoke a discharge only for reasons clearly stated in the Code.").

[62] The U.S. Trustee's motion for summary judgment is supported by copies of Mr. Pennington's bank statements from the time in question, which show the specific instances where Mr. Pennington fraudulently transferred funds from El Paso Animal Hospital to his account, as they match the transfers detailed in the indictment against him. The U.S. Trustee also provided an analysis of Debtors' legitimate income during this time period, which shows based on Debtors' non-plan payment expenses during this time period, Debtors did not have sufficient income to make their plan payments without the embezzled funds. Again, Mr. Pennington did not controvert these facts.

**15**

uncontested the Chapter 13 Trustee learned of Mr. Pennington's indictment and guilty plea to the embezzlement via email from the U.S. Attorney's office on April 8, 2024, and the Chapter 13 Trustee notified the U.S. Trustee's office the same date. Rather than contest these facts, Mr. Pennington argues the U.S. Trustee failed to act promptly to seek revocation after discovering his fraud.

As concluded above, the U.S. Trustee timely sought revocation of Mr. Pennington's discharge, well within the year requirement of the statute. It is uncontested the U.S. Trustee did not learn of Mr. Pennington's fraud until April 2024, just over a month after the discharge was entered. The Court concludes the U.S. Truste has carried its burden of proof to show it did not know of the fraud until after discharge was entered.

Finally, all parties agree revocation of discharge is not mandatory—§ 1328(e) indicates a court "may" revoke the discharge.[63] Mr. Pennington argues the Court should exercise its discretion to decline revocation of discharge, because of Mr. Penington's "overall good faith participation in the bankruptcy process" and that revoking discharge would be counter to the rehabilitative goal of bankruptcy. Mr. Pennington also argues it would be unfair to revoke his discharge, because he had a reasonable expectation of discharge after completing plan payments. He contends

---

[63] 8 *Collier on Bankruptcy* ¶ 1328.04 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[T]he court has ample discretion not to revoke a chapter 13 discharge obtained through fraud, as section 1328(e)(1) provides that the court 'may' revoke the discharge.").

**16**

revoking his discharge "could undermine public confidence in the fairness and predictability of the bankruptcy process."[64]

To the contrary, the Court concludes revocation is justified. Mr. Pennington used stolen money to fund his plan payments and had many opportunities to inform the Court of his termination from his employment, his criminal activity and indictment, and his guilty plea. Rewarding such actions by allowing Mr. Pennington to keep his bankruptcy discharge is the type of ruling that, in Mr. Pennington's words, "could undermine public confidence in the fairness and predictability of the bankruptcy process."[65] As noted at the outset, the goal of bankruptcy is to protect honest but unfortunate debtors, Mr. Pennington does not meet that standard.

## IV. Conclusion

The U.S. Trustee's motion for summary judgment[66] is granted in full. Based on the uncontested facts, the U.S. Trustee is entitled to judgment as a matter of law on its § 1328(e) revocation claim.

**It is so Ordered.**

### #

---

[64] Doc. 19 p. 4.

[65] *Id.*

[66] Doc. 16.